Mr. LaRocca. Good morning, Judge McKee, Judge Hardiman, Judge Pollack. I'm Robert LaRocca on behalf of Mr. and Mrs. Tubbs. Your statute is also clear and unambiguous, right? Well, I think Judge Roth went a long way to clarifying it. This is a little easier. We don't have Santiago I and Santiago II here. We just have Santiago I. Right. In Santiago. The facts of this case are very straightforward. My clients were at a residential real estate closing in which their two prior mortgages on their house were discharged. The defendants, the title agents, charged them $150, paid that to themselves, did no work, we allege, charged them $80, paid that money to Wachovia, and Wachovia did the work. And the question is, does that state a claim under RESPA and Santiago? We claim that there were four errors that the district court made. First, in saying that Santiago required a split of the fees. Second, in assuming facts contrary to our complaint. We allege that the title agent did no work and the settlement agent did no work, and he found that they'd followed up to verify Wachovia's work. And that was not converted to Rule 56? It was not. It was not. Okay. And the third, that he relied on this insurance rates manual that had been handed up at oral argument for a totally different purpose under something about a state law claim, and without converting that to a Rule 56 motion. And then finally, through the succession of errors, he put us in the wrong prong of Santiago, the prong that he said, well, you're really just complaining that they had an unreasonable charge, that they did the work, but they charged the wrong amount. I'd like to begin with the first point, because you exercise plenary review, de novo review on a 12B6 motion, so the issue really is, when you look at our complaint, our amended complaint, and you look at Santiago, does it state a claim? And that's really the issue before the court. Santiago said that a markup is part of RESPA. In other words, a markup is included in the statute. The split fee does make it a little bit different than Santiago, doesn't it? The only difference, Your Honor, is they put the two charges on two lines of the HUD settlement sheet. That might save them, right? Because isn't this all about disclosure? I mean, I'm not saying that any borrower, I know I certainly wouldn't be knowledgeable enough to question this, but because they're on two line items, the borrower may look and say, now, wait a minute, you're charging me $150 on this line and $80 on the other, and it's for the same thing. Why are you doing that? But when you do a markup or a split, it's on one line item and it's buried in there, so even the most careful borrower wouldn't have reason to question it. Well, first of all, Your Honor, on the HUD sheet, the $80 is buried in the hundreds of thousands of dollars, so you can't know. It's buried in the total payoff amount, so you can't see the $80. It's not a separate line item? No. It's on 1501 and 1502. It's in A-79 of the appendix. It's just part of the bundled total payoff amount to Wachovia. It's on the payoff statement that appears at A-91 and A-94. In other words, the Wachovia faxes to the settlement agent before the closing, a payoff statement that has this as a breakdown, but the plaintiffs don't see the payoff statement as a matter of reality, and we also allege that in our complaint. All they see is the one HUD settlement sheet that has the total payoff amount on it, which is hundreds of thousands of dollars for the whole mortgage. And second answer to your question in terms of disclosure, the defendants put their line item on something that says it's a government charge, so I think you or me or anybody looking at that would think that this was some kind of mandated charge by the government, not that it was simply an unearned fee that they're keeping for themselves. So I think for both of those reasons, if we want to look at the disclosure aspect of it, there's been no disclosure of that. I think that the one case to talk about splitting, Your Honor, and Judge Hardiman to address your question, the one case that either of us have been able to find that really has the same fact pattern of this is the Christakos case from the Northern District of Illinois, where exactly the same thing happened, and that's in a much more restrictive circuit. The Seventh Circuit takes a much more restrictive view than this circuit does of RESPA. It requires this kind of bribery almost. And Christakos said, yes, this is a splitting. What happens here is that there's a total amount paid to the settlement agent, in our case $230 paid to cancel two mortgages. They keep $150 of it. They have control over this whole pot, settlement pot. They keep $150 for themselves. They give $80 to Wachovia. That's a splitting. And there's no functional difference. If you're going to require a split under the statute, there's no functional difference between that and any other kind of split that would violate RESPA. I would say, Your Honor, I don't think that there is any difference between a markup and what we're calling. I think when you put it on two different lines, you might call it a duplicative fee rather than a markup. If you put it on one line, you're piggybacking and you're marking up. If you put it on two lines, it's a duplicative fee. Duplicative fees are, I mean, literally the statute says you cannot accept any portion or percentage of any charge other than for services actually performed. So if you look at the reality of this, there was a total amount paid to discharge two mortgages. They accepted a portion of it or a percentage. I think it's literally within the statute. Are you saying the several hundred thousand dollars constitutes one fee and everything under that is a split? No, I'm saying that the 230, if you look at functionally what happened here, there was $230 apportioned in this settlement to cancel two mortgages. And they split it, keeping 150 themselves and giving 80 to Wachovia. I thought they were listed as different charges, though. They are listed. One, their charge, but they had control of this. They listed it, Your Honor. They chose to list their charge under what's called a government charge on line 1203 of the HUD form. And Wachovia's, they put in the total bundled amount of the Wachovia payoff. And that should not have been listed as a government charge? Neither of them should be listed as a government charge. Well, I don't know. So maybe you have an action for them, you know, I don't know, fraud or misstatement. If it shouldn't have been listed as a government charge, maybe that's actionable, but that doesn't mean this was a split or a portion or a percentage, does it? Your Honor, the touchstone of Santiago, as I read it, is that a markup where you pay, all you do in a markup is you pay a person the legitimate amount for their services and you keep the unearned portion. That's what a markup is. You're paying a flood certifier $30, and then you charge the person at the real estate $50. Right. So you might have a line item that says flood certification $50. Right. You collect the $50, you pay him $30, and you keep the money. Exactly. But that's not what happened here, though. But why is that different? To my mind, that's identical to the duplicative fee that we say here. They pay Wachovia $80. Wachovia does the work. Some work. They keep, no, all. He's alleging all the work. They pay Wachovia $80. They get $40 per mortgage satisfaction. Yes. And then they turn around and charge $75 each for who knows what. I mean, at the Rule 12b-6, I think you're quite right, the district court had no warrant to not take at face value your allegation that they did nothing for the $150. Does the policy statement help you? And if so, what deference, if any, do we owe to it? Your Honor, the policy statement, the word markup comes from the Santiago said was part of RESPA, comes from the 2001 policy statement. And duplicative fees are about two words away from that. I mean, it's the same sentence of the policy statement. It says no nominal or duplicative work is done or there is a markup. It's in the same policy statement. And I submit that if you do the Santiago analysis, there really is no distinction between a markup and a duplicative fee. You're paying the legitimate person the legitimate fee. You're keeping the unearned fee. And the impact on the consumer is identical. And that's what Judge Roth. This is a duplicative fee in this case? That's what it seems to me the most logical. Well, unearned, undivided. There's so many terms floating around here. But how do you satisfy the statutory language? I mean, split, portion, percentage, aren't those the magic words? I mean, I know this is hyper-technical. I mean, this is almost, you know, we're parsing here. But the statute uses these specific words. And then you have a regulation that I take it goes ‑‑ I mean, the regulation, if we follow it, goes your way directly. Yes. But their argument is, I think, Santiago said that the statute is ambiguous. Judge Roth, in that opinion, did not have recourse to the HUD regs or the policy statement because she found the statute unambiguous. But she did say that had she found it ambiguous, she would have followed the 2001 policy statement because she found it persuasive. We're bound by that panel's decision that it's unambiguous, though. As to a markup, yes. And I'm saying a duplicative fee, I think, is functionally identical to a markup. There's no ‑‑ I wonder if that helps you. Wouldn't it be better to argue that even though it's unambiguous as to a markup, where you have someone doing nothing and charging a fee, unearned, undivided fee, to get into the last couple of sentences in the policy statement or the regulation, that says specifically what this situation is. And therefore, to the extent that that's not within the fact pattern of Santiago, the absence of ambiguity in Santiago does not suggest that there is not an ambiguity in 8B as to your undivided, unearned situation. I take your point. And therefore, the regulation comes in, the policy statement, and we're deferring to that. I would be happy if you followed that course. May I inquire? Yes. Maybe my colleagues and you will tell me that this is an inappropriate question. This is described, hopefully, as a class action. Yes. And the essential claim is that this was a national pattern of activity on the part of the defendants to do no service and to charge dollars? Your Honor, we have not briefed the class action yet. I think we may – So it is an inappropriate question. Well, and the scope of the class action is not before the district court. We have made no – I mean, the parent operates nationally, but its subsidiary operates locally. And whether we bring it as to any state beyond New Jersey is really something that's not in the record. And to be candid with you, I don't know. I mean, I think we may just limit this to a New Jersey class action. I'm not trying to be cute with you, but it's just – it's not something that we've – it hasn't been formulated in the record yet. Can I ask you if my question can be deleted from the record? No, no. Did the Tubbs pay Wachovia the $80 directly, or did they pay title agency? No, they paid title agency. In other words, all of it came out of the same settlement proceeds. And that's why the Christakos case in Chicago said that it really is the same as a split, because the title – the settlement agent took this money, the total amount to discharge the mortgage, and split it into two, one for the earned piece to the people who did the work and the other to the unearned piece themselves. And that's exactly what – I mean, Christakos really is our case, and Christakos holds that this is a split under the statute, and even under the most restrictive – the Seventh Circuit standard, which is, I think, the most restrictive view of a split. We've covered, I think, Judge Hardiman, my second point, which was not taking our complaint at face value. The third error is relying on this insurance manual, which they put in for a totally different reason, and I think we briefed that, and we're right that it shouldn't have come down. Is there any evidence they were even a member? I couldn't find that in the record. No. I couldn't either. I couldn't either. And then finally, putting us into this unreasonable prong, we're not alleging, obviously, that they did the work and charged the wrong fee. We're saying they didn't do the work. And so the real question before the court is, does it state a claim under Santiago either expressly under the statute or, as Judge McKee, you suggested, finding an ambiguity and looking then at the regs and the policy statements under which we, I think, clearly win. I'll reserve the remainder of my time. Thank you, Mr. Larkin. Good morning, Your Honor. Peter Buscemi on behalf of the appellee. I think I'd like to begin where we've been instructed to begin in cases like this,  the statute prohibits the giving or accepting of, and I'm quoting now, any portion, comma, split, comma, or percentage of any charge. And then it goes on to say, for a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. It doesn't say, as our opponents would have it say, that it prohibits giving or accepting any charge other than for services actually performed. The words portion, split, or percentage were placed in the statute deliberately. They have to have some meaning. Our opponent's interpretation reads them out of the statute. The statute would be exactly the same, according to our opponents, if those words simply weren't there. That doesn't make a lot of sense, though, does it? Because then you're saying that Congress intended that if you have a situation where you did absolutely nothing and kept everything, you're not covered. But if you have absolutely nothing, get $100 for doing absolutely nothing and give 99 cents to somebody else, then you're under the statute. Does that make any sense? Your Honor, I think that the best answer to that question, and we've thought about that question, is that Congress was addressing specific factual situations that came to their attention at the time that this statute was originally enacted in 1974. We've quoted for the Court the statements made by Senator Brock and Representative Blackburn. We've quoted for the Court the Senate Committee Report. They were dealing with a particular problem. It may not be every problem, but it was the problem that they were dealing with, and that's why you see in the Eighth Circuit in the Hogg case and the Seventh Circuit in a whole series of cases, from Mercado to Durr to Echevarria to Krizalik, and all these cases in the Fourth Circuit in Bulware and then in the Arthur case, you see them all recognizing that this statute was intended as an anti-kickback statute. Now, you know, there's old law from the Supreme Court where the Supreme Court has said over and over again that Congress is permitted to take on social problems one step at a time. I think the leading case is Williamson against Lee Optical, which goes way back to the 1950s, and there are others. I get very depressed when you say something like way back to the 1950s. Well, I was around then, too, Your Honor. I mean, you know. He said 1950s, not 80s. Ha, ha, ha. But I think that's the answer to your question. You know, I think Congress could have passed a broader statute. Congress could have just said you may not get any money of any kind from anyone, from any source, in any way, shape, or form, except for work that you perform. That's not the statute that Congress wrote. I thought it was because of the ability to bury a fee under a line item. I thought it was a disclosure issue, but I may be completely wrong on that. Mr. LaRocca's answer to my question seemed to indicate I was wrong. What's your ---- Well, I think ---- Would you agree with his what seemed to me to be a satisfactory explanation about my question regarding one line item versus two line items? Do you understand my point? If it's one line item and I'm going to keep 50 for myself and give the next guy 50, the borrower couldn't possibly know that. But if I'm listing charges that aren't, you know, earned or frivolous, at least you could say, well, caveat emptor. Let me take a shot at that, because I did want to try to correct some of the things that Mr. LaRocca said. This is a little bit technical, but let me try to walk through it. The disclosure statement that we begin with is the document that's at A-79 in the appendix. That's a HUD form, and on that HUD form you will see in the upper right-hand corner the two amounts that were paid from the new loan proceeds to pay off what was owed to Wachovia, because there were two mortgages on the Tubbs property that had to be paid off during the 2008 refinancing. And you'll see two amounts there, $124,000 in change, $14,000 in change. Then if you move on to pages A-91 and A-94 in the appendix, you will see the payoff statements from Wachovia. Now these statements, as Mr. LaRocca acknowledged, and as the amended complaint says, and as Judge Irenas in the district court recognized, these payoff statements were sent to the title agency, but they were also sent to Mrs. Tubbs. If you look at pages A-91 and A-94, you'll see they're addressed to Jane Tubbs, and you'll see that they lay out a series of components that together add up to the two figures that I just mentioned, the $124,000 and the $14,000. One of those items on each of the two payoff statements is a $40 fee. That's the fee that Wachovia in turn paid dollar for dollar to the Camden County clerk to record the satisfaction of each of the two mortgages. And you'll see that. That's also in the record. You'll see the county clerk's stamp in the upper right-hand corner, and it'll say there were two pieces of the $40, a $30 fee and a $10 fee. So Wachovia earned nothing on that. That was just a straight pass-through to the county clerk. Then you'll see there's another fee. Judge Irenas recognized this as well. He looked at these papers fairly closely. There's another fee to Wachovia of $25. That's a servicing fee that went to Wachovia. Mr. LaRocca doesn't mention that at all. That's all included. When you add them all up on each of the payoff statements, you get to the total that you find in the upper right-hand corner on page A79. Those are the two total amounts of the Wachovia payoff, and each of those items is laid out in the payoff statements that were sent to Mrs. Tubbs. May I? I'm sorry. Have you completed your answer? One more sentence, Your Honor. And then, separate from that, there is the fee, completely separate from that. It has nothing to do with Wachovia. There's the fee that is charged by the title agency for receiving these payoff statements, which they've acknowledged. They've pleaded in the complaint. Looking at them, which stands to reason they looked at the payoff statements because they're the title agency and the title insurer. They need to be sure that the mortgage has been released. And we charge $75 per mortgage for that service, and that's what Judge Arenas said at page 8 of his opinion. Thank you, Your Honor. I wanted to ask a question which the answer of which you can put in any time you want. I don't want to interrupt the course of your argument, but I want to be sure that the question is put. I'm not clear why it's incumbent on the court to get into these very appealing complexities in a situation in which, so far as I can see, the district judge departed from the allegations in the amended complaint and almost reframed them. As I understand it, the Tubbs is saying no service was performed at all by your client. And Judge Arenas, page 8 of his opinion, describes the services that were performed by title and so winds up saying, this is not a situation where a title agency marked up Wachapovia's $25 charge, but rather charged a separate fee for its own services. Could the district court reasonably reframe the complaint, except on summary judgment? Well, Your Honor, I have two responses to that. Number one, we think there's a antecedent issue that I was talking about, namely the meaning of the statute that allows this decision to be affirmed on the basis of what Judge Arenas said before he said what you just read. But number two, we don't think that this complaint is as crystal clear as our opponents would like to have it. It is true that there are a number of allegations in the complaint to the effect that we did nothing. But there are also allegations in the complaint, as I said a moment ago, that these payoff statements were in fact sent to our client. And the clear implication of the complaint, and I'm referring now to the paragraphs that we've cited, paragraph 36 and paragraph 43, the clear implication is that we looked at them. And so I think there's an internal tension in the complaint, because naturally we know the plaintiffs want to say we did absolutely nothing because they want to survive the motion to dismiss. And that's why I started by talking about the language of the statute, because I think that if you focus first on the language of the statute, you don't even need to get to these factual concerns. I did want to respond to Judge Hardiman's question about exactly what happened. But for example, if you look at the preceding page of Judge Arenas' opinion, page seven, he starts out by saying, defendants correctly argue that plaintiffs have no claim under RESPA because title agency did not actually split a fee for the same service with any third party. And that's a hundred percent true. There is absolutely no split of this $150 fee. It's a fee that was charged by our client and our client retained the fee. Actually it's two $75 fees combined into one line. So there's no split. And the assertion that the plaintiffs can bring their case within the term markup as that term was used by this court in the Santiago case is simply incorrect. Judge Arenas knew perfectly well what the Santiago case said. He was one of only two judges who decided that case because Judge Chertoff had resigned before that case was decided. So Judge Roth and Judge Arenas decided that case for this court and Judge Arenas knew perfectly well that what the plaintiffs were alleging here was not a Santiago. Santiago involved two kinds of charges that were permitted to go forward. One was a tax service fee and one was a flood conservation fee, whatever that is. I don't purport to know exactly what that is, but the tax service fee was $85 and the flood certification fee was $20. Those were the only numbers that appeared, 85 and 20, but it turned out according to the allegations of the plaintiff, that the defendant had gone elsewhere, had obtained those services for less, that is less than the $85, less than the $20. And so they kept the difference. That was what the court in Santiago said was a markup or a split or a proportion, bringing it within the statutory language. The court said also in Santiago that an overcharge would not qualify. And the court sustained the dismissal of the so-called overcharge. Well, now the plaintiffs. This is the ultimate overcharge. You did nothing. I mean, we, but isn't Judge Pollack's, the import of his question spot on that you have to assume at the rule 12 stage that they are correct when they allege you did nothing. I know your position is in the real world. We had to review the satisfaction piece to do our due diligence before we issued the insurance because only a fool would issue title insurance when the mortgage had not been satisfied. Right. But you can't go to the real world. We're at rule 12. You've got to assume that it's true that your client did nothing. Well, I thought you were also saying that in arguing in alleging you did nothing, there are other allegations in there, the paragraphs you mentioned with 37 and 43, I guess, where they allege certain things that you did. Yes, that's the position. That's our, that's our second position. You know, after you, after we do our statutory construction argument, which is our principal position, we did go further. And I think Your Honor, I would come back to Judge Hardiman's question because I think it's a good question. A federal district judge one time asked me at the oral argument on a motion to dismiss if the plaintiff alleges that he's Napoleon, don't I have to assume that that's true? And I, you know, this was before, I must say this was before Twombly and it was before Iqbal. And I still said the answer to that question was no. Well, after Twombly and Iqbal, that answer to that question is definitely no. So that where the allegation is completely implausible or if it's inconsistent with other allegations in the complaint, I think the court does have the leeway, as the Supreme Court has said now twice, to require some plausibility. But I take Judge Pollack, your point, you're absolutely right. Normally, the standard on 12b-6 is to take the factual allegations as a given. Well, if there was, if there were still, if we were still living in a world post-Twombly and before Iqbal, surely it is plausible that, that your client didn't perform any services. It may be highly improbable, but it's plausible, I would think. And even if your client is not named Napoleon. Well, Your Honor, you could have said the same thing in Twombly, you know, because what the court said in Twombly was not that the allegations of there was no suggestion in the complaint of anything to make the court think that the conduct alleged was simply the conduct that was undertaken by the defendants individually because it was in their economic self-interest to do so. And the court said in Twombly, before we got to Iqbal and it's unusual circumstances, but in Twombly the court said you have to come forward with something to make us think that you have a reason for saying that what these defendants did was the product of collusion or a combination or an agreement and then not simply their independent action in their self-interest. If it's consistent with their independent economic self-interest, said the court, and you come forward with nothing to diminish that possibility, then the complaint can't go forward. So I think that's how that one went. I would like to say, if I just may, Your Honor, I know my time is up, but we do think that the court, if the court disagrees with us and thinks that for some reason this case is different, can proceed notwithstanding the lack of any portion, any split, any percentage, notwithstanding the statutory language, I do think that the dismissal should stand in any event against title group. You will look forever in this amended complaint for any assertion that the plaintiffs ever dealt with title agencies, parent, title group, or the title group did anything wrong, or the title group received any money or imposed any charge, did anything having to do with plaintiffs. And if somebody else wants to come forward, if there's another plaintiff who has another transaction and claims they dealt with title group, that's one thing. But these plaintiffs have no claim against title group. They haven't even asserted one. So we think that the dismissal, regardless of what the court does on anything else, and, of course, we urge the court to affirm based on the statutory language, but regardless of what the court does on anything else, we think that title group should definitely be out of the case. Thank you, Mr. Buscemi. Thank you, Your Honor. I'd like to make five points, and since I only have two minutes, I'll try to talk fast. Go ahead and whittle it down to two. The first is my colleague's statement that these payoff statements were sent to Mr. and Mrs. Tubbs, I think possibly because he's relatively new to the case. He didn't realize this. Our complaint says exactly the opposite. It says that the Tubbs don't get these, that they aren't sent to the borrowers. They're sent just directly from Wachovia to the title agency, and that's actually confirmed if you look at the page itself, which appears at A91. It says Mrs. Tubbs' name on the top, but it's a tension. It's a fact. It's a tension. Nicole DiPaletto, well, she's one of the defendant's employees, so I think that was just an inadvertent misstatement. It's paragraphs 36 and 43 where we say that the plaintiffs don't see the statements. The second point is that Santiago itself cites with approval to the HUD regulation that uses the word duplicity. That's the ultimate indicta, though. She writes that the plain language is unambiguous, and then she does the fallback position, does she not? And says, well, even if it were ambiguous, you would still lose. I think that's a different point where she's saying you can remand and you have to look at whether they actually did real legitimate services or not. I think it's two different portions. One is in the footnote she says we would find the HUD 2001 statement persuasive, but then on the last page of the opinion she says, and this is in the text of the opinion, Regulation X at 24 CFR 3500.14C specifically bars charges for, quote, nominal services and states that, quote, duplicative fees are unearned fees which violate the law. I still wrestle with that, Mr. LaRocca, though, because the HUD regulation and what you just read clearly wins the case for your client, but I'm wrestling with the fact that that language seems directly at odds with the statutory language, which requires a portion, split, or percentage. I can conjure many situations where there's an unearned fee or a duplicative fee, but yet it does not constitute a portion, split, or percentage. What do we make of that? I think just to go back to Chris Stocker's point, I mean, if you stand back and say, all right, what happened here? Two mortgages were discharged. Two mortgages were discharged. How much was charged for the discharge of two mortgages? $230. It was a pool of $230 that was paid out at that settlement to discharge two mortgages. The defendants had control of that money. What did they do with it? They paid Wachovia $80, and Wachovia did the work. They kept $150, and they did no work. I think that's the logic of the settlement. Well, the Wachovia fee, that was just a pass-through to the government to file it. That was a filing fee. Wachovia. That doesn't account for the due diligence to make sure that someone actually filed the documents. You're arguing it's still a split. I'm arguing it's a split. I thought that was the point. That was Judge Hardiman's point about the statute. Why should you plead it was a split? We do not plead it was a split. Does the complaint say portion, split, or percentage anywhere in the complaint? I would have to go through it again. I can't represent it as I stand here to you. But we think that it's certainly within Santiago and that it is within the way Christakos looks at this. It says, look at this functionally, what really happened at the settlement. The point about the cases that they're relying on for a split, Hogg, Bolwar, Krozalik, are exactly the cases that rejected what this Court accepted in Santiago. They're all cases where you paid a legitimate person for like a credit report, $15 or $30, and then marked it up, kept an unearned portion. You wrote Mr. Buscemi's argument that in parts of the complaint, you did allege that they did some work. I think he said paragraph 37. Your Honor, that's what they've run away for. What he's saying is that when we refer to them getting the payoff statement, HUD said our clients paid $325 to them to act as settlement agents. That goes on line 1101 of the HUD's form. This is A79. It says settlement or closing fee to North American Title Agency, $325. We said, okay, that's what we paid them. That's a legitimate charge to act as settlement agents. What do you do as a settlement agent? You get the payoff statement from Wachovia, so you can figure out how to disperse the settlement funds. I mean, that's what a settlement agent did. We paid them that amount in 1101. Now, what they're trying to say is, oh, well, that also justifies our charge at 1203 for getting the payoff statement somehow was connected because we had to figure out how to pay $80 to Wachovia for the mortgage charge. It's just another way of saying a duplicative fee. It's something that we've already paid them. The HUD regulation says that 1101 is supposed to include all of their charges. I'm still – I'm sorry to beat the drum again, but you're calling it a duplicative fee. You've been consistent in that today. But when you look at the allegations of your complaint, and I'm quoting from paragraphs 30 and 35, quote, plaintiffs paid the release recording fees release $150 to title agency at closing. And then you allege Wachovia separately charged plaintiffs and plaintiffs paid Wachovia $40 for each mortgage respectively. I mean, you're alleging right in the complaint that these are separate fees. Well, I think the substance of what at least we were trying to allege is I think in the rest of the complaint that Wachovia did all of the work. Yes, they were separate. It was a charge. They're separate charges. Well, they chose to do it, Judge Hardiman. This is the central point. What the argument boils down to, and this is what Judge Irenas was asking them at the oral argument, do you mean to tell me that if you take the $80 to Wachovia and put it on line 1203, so now you've got $230 at line 1203. They lose. That's a violation. But they do the form. So you're saying, I mean, the logic of that argument is, okay, they can violate RESPA or not violate RESPA depending on which line item they choose to put the form down. But RESPA, the substance of it, that's what Santiago gets at. What's the substance of the transaction here? What is the impact on the consumer? And is it functionally the same as a markup? If you're saying, Judge Hardiman, yes, you put both charges on 1203, then it becomes a markup. But if you keep their charge, Wachovia's charge at line 1501, and they put their own separate charge at 1203, it's not a markup. But that's just a matter of form, not substance. I mean, I would prefer the statute cover both instances, but I'm wrestling with the statutory language, which seems to say that it needs to be uses the word charge, and it uses the words portion, percentage, or I forgot the third word. What was the third word? Split. Split. Split. I mean, it's hyper-technical, and maybe, I don't know. With the split, that's why you're arguing that taking money for no work and then passing a portion of that on, you're arguing that is a split. You can say undivided charge. You can say it's an undivided charge for which no work is done, or we can say it's a split because somebody else is doing it. You can characterize it different ways. But at the end result, it's the same principle as Santiago. You've got a totally unearned fee that is kept by the defendant and an earned fee for work actually done. But then couldn't an attorney or a party bring a class action in every single mortgage closing in the country? Isn't that correct? Is that what you're saying? Well, maybe it is. I don't know. I mean, you could allege, it seems to me, the import of what you're arguing is if one can simply allege that line item 1201 or 1623 is an unearned fee, I mean, couldn't you allege that that happens in every closing? Your Honor, the only court that has gone that far is the Cohen v. J.P. Morgan Chase Court. The Second Circuit has taken it one step further and said, yes, a unilateral charge that's not connected to any other, anybody else's charge, is a violation of RESPA. That was a 2007 decision which is cited in the defendant's brief. We aren't taking that. You don't have to go that far in this case because I think that what we're saying is a duplicative fee is essentially no different than a markup. They're both used in the HUD regs. They're both used in the policy statement. They're both within the same consumer impact that Santiago talks about. In other words, it's tied because, and I feel like I don't want to be a broken record here, but it's tied to there being a pool, a total amount that was used to discharge these two mortgages. I mean, that's the reality of what went on here. $230 was collected by the defendants and dispersed to discharge two mortgages, and they dispersed 80 of it to Wachovia, and they kept 150 of it themselves, and that's why I think it's within the statute. Well, they didn't collect 230. They collected hundreds of thousands, right? Yes, but you could say, I mean, looking at the reality, that $230 was used from this closing ostensibly to discharge two mortgages. 80 went to Wachovia, who did all of the work, we allege. 150 was retained by them for an unearned fee, and that's a split. It's a portion. It's a percentage, however you want to call it, but I think it is within the statute, and that's what the Christakos case holds. Thank you very much. Thank you very much. Very interesting case. Again, very well-argued by both counsel, and we'll take that into account.